UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| HARPER ADVANCE, LLC, and SACATELLE LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　- against -<br><br>GLOBAL MANAGEMENT SERVICES, LLC, and ROGER MORGAN,<br><br>　　　　　　　　　　Defendants. | Civil Action No: |

## COMPLAINT

Plaintiffs Harper Advance, LLC ("**Harper**") and Sacatelle LLC ("**Sacatelle**" together with Harper collectively, the "**Plaintiffs**"), by and through their undersigned Counsel, as and for their Complaint as against Defendants Global Management Services, LLC ("**GMS**") and Roger Morgan ("**Morgan**" together with GMS the "**Defendants**", and collectively with Plaintiffs the "**Parties**"), hereby allege as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' failure to refund certain prepayments totaling One Million One Hundred Sixty-Two Thousand One Hundred and Twenty-Five Dollars ($1,162,125.00) to Plaintiffs after Defendants failed to deliver to Plaintiffs certain personal protective equipment ordered by Plaintiffs. Defendants have acknowledged their obligation to return these funds to Plaintiffs, and have also admitted that they failed to refund said payments.

## THE PARTIES

2. Harper is an entity duly organized under the laws of the State of California and conducts business at 8484 Wilshire Blvd, #630, Beverly Hills, California 90211.

1

3.  Sacatelle is an entity duly organized under the laws of the State of New York and conducts business at 5632 Washington Boulevard, Los Angeles, California 90016.

4.  GMS is an entity duly organized under the laws of the State of Texas and conducts business in Stafford, Fort Bend County. GMS may be served through its registered agent at 2821 N Main Street, Stafford, Texas 77477, or at 6464 San Felipe St., Apt. 3202, Houston, Texas 77057, or wherever he may be found.

5.  Morgan is an individual who resides in Houston, Harris County, Texas, and he may be served at 6464 San Felipe St., Apt. 3202, Houston, Texas 77057, or at 2821 N. Main Street, Stafford, Texas 77477, or wherever he may be found. Morgan is the sole manager of GMS and upon information and belief, is the sole member of GMS.

## JURISDICTION & VENUE

6.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because no Plaintiff is a citizen of the same state as any Defendant. Specifically, Harper is a California limited liability company with its principal place of business in California, and Sacatelle is a New York limited liability company with its principal place of business in California. Furthermore, upon information and belief, all members of Harper and Sacatelle are citizens of either California or New York. Conversely, Defendants GMS and Morgan are each citizens of Texas, and upon information and belief, Morgan is the sole member of GMS. As such, there is complete diversity between Plaintiffs and Defendants, including their members. Moreover, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.  Venue is proper in the Southern District of Texas pursuant to a certain Governing Law provision in a Purchase Order Agreement dated May 22, 2020 ("**Agreement**"), in which the Parties agreed that "all disputes shall be adjudicated exclusively in Texas State Court (Harris

County) or, if subject matter jurisdiction can be established, in the U.S. District Court for the Southern District of Texas."

8. Thus, pursuant to the Governing Law provision in the Agreement, the Parties consented to this Court's jurisdiction.

## FACTUAL BACKGROUND

9. On May 22, 2020, Plaintiffs entered into the Agreement with Defendants, whereby Plaintiffs agreed to purchase personal protective equipment ("**PPE**") in the form of 1.2 million 3M N95 Particulate Masks for a total price of One Million One Hundred Sixty-Two Thousand One Hundred and Twenty-Five Dollars ($1,162,125.00).

10. Morgan, as President, executed the Agreement on behalf of GMS.

11. At all relevant times hereto, GMS is an *alter ego* of Morgan, and as *alter egos*, Morgan was directly involved with GMS's scheme to defraud Plaintiffs, and Morgan personally benefitted from his participation in such fraudulent conduct.

12. As such, Morgan and GMS are jointly and severally liable to Plaintiffs for the claims asserted herein insomuch as they are *alter egos*.

13. In fact, Plaintiffs were induced to enter into the Agreement based upon Morgan's representations that GMS would sell and deliver the PPE in a timely fashion, which turned out to be false.

14. Additionally, to induce Plaintiffs to enter into the Agreement, Morgan falsely represented to Plaintiffs that GMS was an established distributor of PPE.

15. Plaintiffs justifiably relied upon Morgan's representations concerning both GMS's ability to timely perform under the Agreement <u>and</u> that GMS was an established distributor of PPE.

16. However, Plaintiffs subsequently learned that Morgan had no experience in distributing PPE, but rather, that he was an accused fraudster.

17. Pursuant to the Agreement, Harper submitted a payment of Five Hundred Thousand Eighty-One Thousand Sixty-Two Dollars and Fifty Cents ($581,062.50) on May 22, 2020.

18. The remaining balance of $581,062.50 was remitted by Sacatelle that same day.

19. The Agreement further provided that the projected completion date for delivery of the PPE would be June 26, 2020.

20. Pursuant to the Agreement, in the event of any default on the part of the Defendants, they were bound to return the purchase funds to Plaintiffs no later than 90 days from the projected completion date.

21. On September 30, 2020, after Defendants had failed to deliver *any* of the purchased the PPE to Plaintiffs, Plaintiffs sent Defendants notice of their default.

22. Additionally, on September 30, 2020, and October 1, 2020, Defendants and Plaintiffs executed a certain Assignment and Assumption Agreement (the "**Assignment**") respectively, whereby the Parties agreed that Plaintiffs would assign the entirety of their rights to the PPE equipment arising under the Agreement to Defendants, in consideration for a full refund and return of the funds remitted in connection with the Agreement.

23. To date, Defendants have failed, and continue to fail, to deliver *any* of the PPE equipment purchased by Plaintiffs.

24. To date, Defendants have also failed, and continue to fail, to refund and return the remitted payments made by Plaintiffs in the amount of $1,162,125.00, as agreed upon pursuant to the Assignment.

## CLAIMS FOR RELIEF

### COUNT I – BREACH OF CONTRACT

25. The paragraphs above are realleged and incorporated herein by reference as if set forth in this Count.

26. The Agreement is a valid and binding contract.

27. The Assignment is a valid and binding contract.

28. As noted *supra*, the Agreement provided (among other things) that the projected completion date for delivery of the PPE would be June 26, 2020, and in the event of any default on the part of Defendants, they were bound to return the purchase funds (in the amount of $1,162,125.00) to Plaintiffs no later than 90 days from the projected completion date.

29. Defendants breached the Agreement by failing to: (i) deliver the PPE by June 26, 2020; and (ii) return any portion of the purchase funds (in the amount of $1,162,125.00) to Plaintiffs to date.

30. Additionally, and as noted *supra*, the Assignment provided (among other things) that Plaintiffs would assign the entirety of their rights to the PPE equipment arising under the Agreement to Defendants, in consideration for a full refund and return of the funds remitted in connection with the Agreement.

31. Defendants breached the Assignment by failing to refund and return the remitted payments made by Plaintiffs in the amount of $1,162,125.00 to Defendants, and thus, are jointly and severally liable to Plaintiffs.

32. As a result, Plaintiffs have suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of this Court.

## COUNT 2 – FRAUD

33. The paragraphs above are realleged and incorporated herein by reference as if set forth in this Count.

34. Defendants made false and material misrepresentations to Plaintiffs, which, at the time they were made, Defendants knew to be false and/or which Defendants made recklessly, as a positive assertion, and/or without knowledge of their truth.

35. Defendants made such representations with the intent that Plaintiffs would act upon them and enter into the Agreement and Assignment.

36. Plaintiffs reasonably and justifiably relied on Defendants' assertions that they would be able to adequately and timely deliver the PPE negotiated for in the Agreement and Assignment.

37. Defendants never intended to perform any of their obligations under the Agreement and Assignment, as evidenced by their continued failure to: (i) timely deliver the PPE; and (ii) refund and return the remitted payments in the amount of $1,162,125.00.

38. Moreover, Defendants fraudulently induced Plaintiffs to enter into the Agreement and to pay $1,162,125.00, by representing that Defendants were willing and able to perform under the Agreement, which turned out to be false.

39. Defendants had no ability or actual intention to perform under the Agreement or Assignment and knew that their representations and promises to Plaintiffs were false, and made with the intent of inducing Plaintiffs to enter into the Agreement and Assignment.

40. Plaintiffs reasonably and justifiably relied upon Defendants' representations concerning their ability to perform under the Agreement and Assignment, and based upon Defendants' falsehoods, Plaintiffs were injured due to their payment in the amount of $1,162,125.00, which Defendants have failed to refund and return.

41. Defendants are jointly and severally liable to Plaintiffs for the sum of $1,162,125.00, as well as any lost profits stemming from their fraudulent conduct.

42. Due to the severity of Defendants' fraudulent conduct, Defendants are also jointly and severally liable to Plaintiffs for exemplary damages, in an amount to be determined by the Court.

43. As a result, Plaintiffs have suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT 3 – FRAUDULENT TRANSFER

44. The paragraphs above are realleged and incorporated herein by reference as if set forth in this Count.

45. Upon information and belief, GMS has since transferred the $1,162,125.00 paid by Plaintiffs to Morgan, and that the aforesaid transfer was made without receiving a reasonable equivalent value in exchange, and GMS was or became insolvent as a result of said transfer.

46. In addition, and alternatively, any transfer(s) made by GMS to Morgan was made with the actual intent to hinder, delay, or defraud creditors, such as Plaintiffs.

47. Also, any transfer(s) made by GMS to Morgan was made without receiving reasonable equivalent value, and GMS was engaged in business or a transaction for which its remaining assets were unreasonably small, or in which it intended or believed that it would incur debt beyond its ability to pay.

48. Therefore, to the extent that GMS's transfers to Morgan, or any other third party at the direction of Morgan, were fraudulent under the Texas Uniform Fraudulent Transfer Action ("**TUFTA**"), any such transfer(s) should be avoided, and the assets of any transferred funds (as well as any other property of Morgan) should be attached, and an injunction should be issued enjoining the further disposition of assets belonging to GMS and/or Morgan. The Court should

also award monetary damages as against each of the Defendants, and hold them jointly and severally liable for any such fraudulent transfer(s).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment:

(1) First Count as against Defendants, holding them jointly and severally liable, in an amount of $1,162,125.00, plus pre-judgment and post-judgment interest at the maximum legal rate, costs, and attorneys' fees;

(2) Second Count, as against Defendants, holding them jointly and severally liable, in an amount of $1,162,125.00, plus pre-judgment and post-judgment interest at the maximum legal rate, lost profits, costs, attorneys' fees, and exemplary damages;

(3) Third Count, as against Defendants, including, but not limited to all remedies available under TUFTA for GMS's fraudulent transfers to Morgan, including monetary relief as against Defendants, holding them jointly and severally liable; and

(4) For such other and further relief as may be just, proper, and equitable.

Dated: August 18, 2021
      Houston, Texas

Respectfully submitted,

**ALMANZA, BLACKBURN, DICKIE & MITCHELL, LLP**

By: _____

A. Boone Almanza
State Bar No. 01579001
Federal Bar ID No. 433711
balmanza@abdmlaw.com
2301 S. Capital of Texas Hwy, Bldg H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 (fax)

**TUREK ROTH GROSSMAN LLP**
Jason A. Grossman, Esq.
Gaddi Goren, Esq.
377 Fifth Avenue - 6th Floor
New York, New York 10016
(212) 223-3562
*Pro hac vice*

*Attorneys for the Plaintiffs*
*HARPER ADVANCE, LLC, and SACATELLE LLC*